**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| YUSUF ALI AHMAD, | : | Bankruptcy No. 14-19528-AMC |
| | : | |
| Debtor. | : | |
| _____ | : | |
| | : | |
| YUSUF ALI AHMAD, | : | |
| | : | |
| Plaintiff, | : | Adversary No. 15-0069 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| SOCIAL SECURITY ADMINISTRATION,: | | |
| | : | |
| Defendant. | : | |
| _____ | : | |

**MEMORANDUM OPINION**

The United States of America, Social Security Administration ("SSA") has moved to dismiss the complaint ("Complaint") of Yusuf Ali Ahmad ("Debtor") filed in the above-captioned adversary proceeding pursuant to Federal Rule of Civil Procedure 12(b)(6) as incorporated by Federal Rule of Bankruptcy Procedure 7012 ("Dismissal Motion"). Plaintiff has failed to file a written response thereto but both parties appeared at the hearing on the Dismissal Motion held on July 27, 2015 ("Hearing"). For the reasons set forth below, the Court will enter an order granting the Dismissal Motion.

The Debtor filed a voluntary Chapter 7 petition under Title 11 of the United States Code ("Code") on December 2, 2014. On February 23, 2015, the Debtor filed a Complaint against the SSA seeking to recover: (1) post-petition retirement benefits which were allegedly withheld by the SSA in violation of § 362 of the Code, and (2) pre-petition retirement benefits which were

1

allegedly withheld by the SSA as preferences in violation of § 547 of the Code.[1] Adversary Proceeding Docket Entry ("Dkt.") 1. The SSA filed the Dismissal Motion on April 30, 2015.[2] Dkt. 15.

## Background

The Debtor was disabled in a motor vehicle accident in 2004. Complaint, p. 2. On August 8, 2005, the SSA notified the Debtor that he was eligible to receive monthly disability benefits as of January 27, 2005. Dismissal Motion, Ex. A. On January 8, 2013, the SSA notified the Debtor that, as of March 2011, the Debtor was no longer eligible for disability benefits because the SSA had determined that the Debtor had engaged in "substantial work." Dismissal Motion, Ex. B. Accordingly, the SSA concluded that the Debtor had been overpaid $31,148.20 in disability benefits and was required to refund such overpayment to the SSA by February 10, 2013. Id.

On August 10, 2013, the SSA notified the Debtor that he was entitled to receive monthly retirement benefits as of September 2013. Dismissal Motion, Ex. C. However, the SSA began withholding the Debtor's retirement benefits in March of 2014 on account of the overpayment described above. Dismissal Motion, p. 3. With regard to the preference period (i.e., the 90 day period prior to the Debtor's bankruptcy filing and hereafter referred to as the "Preference Period"), the SSA withheld $1,237 in each of September and October of 2014, as well as an

---

[1] Although the Debtor has not clearly and consistently set forth the total pre-petition amount that he is seeking to recover under § 547(b) in his Complaint, and may be seeking to recover all retirement payments withheld by the SSA in 2014, the Court will only review alleged preference payments (i.e., withheld retirement payments) during the 90 day period prior to the Debtor's bankruptcy filing because the SSA is not an insider of the Debtor. See § 547(b)(4)(A) (transfers made by debtor on or within the 90 days before the date of filing may be avoided) and § 547(b)(4)(B) (transfers made by a debtor to insiders between 90 days and one year before the date of filing may be avoided).

[2] The Debtor re-served the summons and Complaint on the SSA on April 10, 2015, because the prior service of those pleadings was defective.

2

additional $1,236.90 in November of 2014. Id. Thus, the SSA withheld a total of $3,710.90 in retirement benefits from the Debtor during the Preference Period.

After the Debtor filed for bankruptcy, the SSA withheld the Debtor's retirement benefits in December of 2014 and January of 2015 totaling $2,494.80. Dismissal Motion, p. 8. The SSA asserted in its Dismissal Motion and at the Hearing that, once it realized that the Debtor had filed bankruptcy, the SSA took corrective action to reimburse that $2,494.80 to the Debtor. Id. The Debtor acknowledged at the Hearing that the SSA had, in fact, reimbursed the $2,494.80 in post-petition retirement benefits to him. The Debtor then conceded that he was only seeking to collect the pre-petition retirement benefits which the SSA had withheld. Id. The Debtor's § 362 claim for post-petition retirement benefits, accordingly, has been withdrawn and the Court will proceed to review the Debtor's § 547 claim for pre-petition retirement benefits.

## Legal Standard

A. Bankruptcy Rule 7012

In determining whether a cause of action has been stated under Federal Rule of Civil Procedure 12(b)(6), as incorporated by Federal Rule of Bankruptcy Procedure 7012, the Third Circuit requires a court to "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d. Cir. 2009) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). In addition, the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" and must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007) (citation and internal quotations omitted).

3

The Third Circuit requires a court to engage in a three-step analysis to determine the sufficiency of a complaint:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

Advanced Rehabilitation, LLC v. UnitedHealth Group, Inc., 498 Fed. Appx. 173, 176 (3d Cir. 2012) (non-precedential) (quoting Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011)).

While courts must primarily consider the allegations contained in the complaint, matters of public record, orders, exhibits attached to the complaint, and items appearing in the record of the case may also be taken into account. See Slater v. Marshall, 895 F.Supp. 93, 94 (E.D. Pa. 1995) (citing Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990)).

When dealing with a *pro se* plaintiff, the complaint may be held to a less stringent standard and should be interpreted "in the most indulgent way possible". See Garceran v. Morris County Prosecutors Office, 2015 WL 858106, at *3 (D.N.J. Feb. 27, 2015); Franklin v. GMAC Mortgage, 523 Fed. Appx. 172, 172-73 (3d Cir. 2013); Wassem v. Romac Intern, Inc., 1998 WL 834094, at *3 (E.D. Pa. Dec. 1, 1998).

B.   § 547

As discussed above, the Complaint seeks to recover Debtor's retirement benefits which were withheld by the SSA during the Preference Period pursuant to § 547(b) of the Code.[3] In its

---

[3] Although § 547 only empowers a trustee (not a debtor) to avoid transfers, § 522(h) provides a debtor with many of the same powers as the trustee, including the ability to avoid transfers that are avoidable under § 547 (and § 553 discussed *infra*), if the trustee fails to avoid such transfers. 11 U.S.C. § 522(h); In re Howe, 446 B.R. 153, 157

4

Dismissal Motion, the SSA argues that § 547(b) is inapplicable here because its withholding of pre-petition retirement benefits does not constitute a "transfer" under § 547. Dismissal Motion, p. 5-6. According to the SSA, its withholding of retirement benefits constitutes a "setoff" under § 553 of the Code against the SSA's overpayment of disability benefits. Dismissal Motion, p. 6.

Indeed, the Third Circuit has held that § 553, not § 547, applies to creditors who assert a right of pre-petition setoff:

> Although setoffs might otherwise be treated as preferential transfers, section 547 is not applicable because section 553(a) provides that:
>
> Except for as otherwise provided in this section and in section 362 and 363 of his title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case ....
>
> Our reading of this language is that, where a setoff right is being asserted, section 553, rather than section 547, governs the creditor's rights."

Lee v. Schweiker, 739 F.2d 870, 873 n.4 (3d Cir. 1984) (citing F.D.I.C. v. Bank of America, 701 F.2d 831, 836 (9th Cir.1983)). See also In re Aspen Data Graphics, Inc., 109 B.R. 677, 683 (Bankr. E.D. Pa. 1990) ("Once the right of setoff has been established, the provisions of § 547 may not be utilized, as [§§ 547 and 553] are deemed mutually exclusive remedies").

The Court therefore concludes that the SSA's pre-petition withholding of Debtor's retirement benefits based upon its pre-petition overpayment of disability benefits to the Debtor constitutes a pre-petition setoff which is governed exclusively under § 553 and cannot be avoided as a transfer under § 547.

C.   § 553

---

(Bankr. E.D. Pa. 2009). Although the Debtor has not raised § 522(h) in his Complaint, the Court will consider whether this pro se Debtor is entitled to avoid the SSA's withholding of pre-petition retirement benefits. See Franklin v. GMAC Mortgage, 523 Fed. Appx. 172, 172-73 (3d Cir. 2013).

5

In its Dismissal Motion, the SSA argues that, even if the Debtor had sought to avoid the SSA's offset against his retirement benefits under § 553(b), the Debtor would not have prevailed because the SSA did not "improve its position" during the Preference Period. Dismissal Motion, p. 6. The Court agrees.

Section 553(b) "provides that, if the amount by which a creditor's claim against the debtor exceeds the debt owed the creditor by the debtor, known as the "insufficiency," decreases within the ninety days of filing the petition, the creditor can only setoff an amount which will leave the "insufficiency" where it was 90 days before the petition was filed." Lee, 739 F.2d at 876-77.

Section 553(b)(1) provides in relevant part that:

> (b)(1) ...if a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of the filing of the petition, then the trustee may recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of--
>
> (A) 90 days before the date of the filing of the petition; and
>
> (B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.

Section 533(b)(2) defines "insufficiency" as the "amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim."[4]

In Lee, as in this case, a debtor argued that the SSA had improved its position when it set off prior overpayments against the debtor's monthly benefits during the preference period. In

---

[4] The Third Circuit noted that the congressional "concern in enacting the improvement in position test was that creditors, primarily banks[] that had mutual accounts with the debtor would foresee the approach of bankruptcy and scramble to secure a better position for themselves by decreasing the "insufficiency," to the detriment of the other creditors." Lee, 739 F.2d at 877. For example, "a bank with a continuing relationship with the debtor could not only anticipate the bankruptcy filing, but also pressure the debtor to increase its deposits, or reduce its short-term loans to the debtor." Id.

6

determining the amount of any insufficiency on the first day of the preference period, the Third Circuit rejected the debtor's argument that no benefits were due to the debtor on that date because they were not payable on that date. See Lee 739 F.2d at 877. The Third Circuit held that all such benefits owed to a debtor during the preference period should be considered obligations of the SSA to the debtor on the first day of the preference period for the purposes of applying the "improvement in position" test (and calculating the insufficiency on the 90th day before the filing) even though such benefits may not all be payable on the first day of the preference period. Id.

Although the amount of the SSA overpayment in Lee was less than the amount of pre-petition benefits due to the debtor, and the Court concluded that there was no insufficiency and thus no basis for the debtor's attempt to recover the pre-petition set offs, the analysis and reasoning set forth in Lee clearly applies in this case, where the amount of the SSA overpayment exceeds the amount of the pre-petition benefits the Debtor was entitled to. See id. at 870 & n. 13.

Here, on the first day of the Preference Period, the outstanding overpayment amount was $20,198.00, and the total amount of retirement benefits that the Debtor was entitled to during the Preference Period was $3,711.00. The insufficiency was therefore $16,487.00 on the first day of the Preference Period. As of the filing date, the outstanding overpayment amount was $16,487.00, and there were no remaining pre-petition retirement benefits due to the Debtor. The insufficiency on the filing date accordingly was the same $16,487.00.[5]

---

[5] The Court recognizes that the allegations set forth in the Adversary Complaint control its disposition of this matter. See Pension Ben. Guar. Corp. v. White Consol. Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."). As noted above, the Debtor has failed to clearly assert the amounts set off by the SSA. The Court has therefore relied upon the set off amounts asserted by the SSA, which are generally *higher* than those alleged by the Debtor. In any event, the Court's disposition would be the same regardless of which party's figures are relied upon.

Because there is nothing that either the SSA or the Debtor could have done to increase the amount of benefits that would accrue to the Debtor during the Preference Period, and because, as noted above following Lee, those benefits accrued on the first day of the Preference Period, there was no decrease in the SSA's insufficiency during the Preference Period and the SSA did not improve its position by virtue of its pre-petition setoffs against the Debtor's retirement benefits. The pre-petition amounts set off by the SSA therefore could not have been recovered by the Debtor pursuant to Section 533(b) even if he had properly sought relief thereunder.[6]

In conclusion, the Debtor's Complaint fails to state a plausible claim upon which relief can be granted. The Dismissal Motion accordingly will be granted and the Complaint will be dismissed with prejudice pursuant to Federal Rule of Bankruptcy Procedure 7012.

Date: August 24, 2015

_____
Ashely M. Chan
United States Bankruptcy Judge

---

[6] The Court concludes that there is no reason to calculate the insufficiency in connection with each incident of setoff during the Preference Period. Because pursuant to Lee the benefit payments legally accrue on the first day of the Preference Period, the Court needs only compare the insufficiency on that date with the insufficiency on the filing date. Of course, the same analysis would apply, and the same result would be achieved, if the insufficiency was calculated with respect to each incident of set off during the Preference Period. Thus, after the September 2014 set off in the amount of $1,237, the Debtor's indebtedness to the SSA on account of the prior overpayment of disability benefits dropped to $18,961.00, and the SSA's obligation to pay the Debtor his retirement benefits for the remainder of the preference period (in October and November 2014) dropped to $2,474.00. Thus, the insufficiency at the time of the September 2014 offset remained $16,487.00. Likewise, after the October 2014 set off, the amount of the overpayment dropped to $17,724.00 and the amount of remaining pre-petition benefits was $1,237.00, again resulting in an insufficiency of $16,487.00. Finally, after the November 2014 set off, the amount of the overpayment dropped to $16,487.00 and the SSA did not owe any further pre-petition benefits so the insufficiency was $16,487.00.